IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS WAYNE MIZE, | No. 2:11-CV-1114-JAM-CMK-P |
|     Petitioner, | |
|   vs. | <u>FINDINGS AND RECOMMENDATIONS</u> |
| M. CATE, et al., | |
|     Respondents. | |
|                          / | |

       Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the court are petitioner's petition for a writ of habeas corpus (Doc. 1), respondent's answer (Doc. 19), and petitioner's reply (Doc. 27).  Also before the court is petitioner's motion for leave to conduct discovery (Doc. 28).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# I. BACKGROUND

A. **Facts**[1]

The state court recited the following facts, and petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

> The pivotal factual question posed to the jury was whether defendant resided in California or Oregon. There was an abundance of evidence that he had moved to California for a period of time far in excess of the 10-day trigger to register as a sex offender. We provide a brief sketch of that evidence. . . .
> First, following his arrest, defendant himself provided his address as 6998 Highway 273 in Anderson and told his probation officer that he had resided in Shasta County for nine months. He gave the same address to a second probation officer a few days later and repeated that he had lived at that address for nine months. But he also told the second probation officer that he had lived in Shasta county for 20 years.
> Second, his then girlfriend, Suzanne Rodriguez, testified that she moved with defendant to Shasta County at the end of April or beginning of May 2006. They lived with an elderly woman, Oleta Dobson. Because defendant had been Dobson's son's best friend before the son died, Dobson allowed defendant and Rodriguez to live in a converted garage unit in exchange for some odd jobs. Rodriguez further testified they remained at Dobson's house from the end of April to June with the exception of a week she left to go to Turlock and three or four days when defendant left to sell his Jeep. She admitted she drank heavily during the time they lived together at Dobson's. On June 16, 2006, a non-contact order was issued on her behalf when she went to the emergency room following an incident with defendant.
> Third, Dobson and her twin sister Ozella Mitchell, almost 70 years old, both testified that defendant lived at Dobson's house on and off for a couple of months. At trial both claimed faulty memories but acknowledged defendant had stayed at Dobson's house. Dobson testified defendant stayed in her family room, which had been converted from a garage and had a sleeping area and bathroom. Dobson was annoyed that defendant had not kept up his end of the bargain and failed to get much work done for her. She disliked his girlfriend's drinking. Nevertheless, because the unit had its own entrance, she did not know precisely when defendant or Rodriguez was there. She told an investigator for the district attorney's office that defendant had lived with her for about three months.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct." Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. See id. These facts are, therefore, drawn from the state court's opinion(s), lodged in this court. Petitioner may also be referred to as "defendant."

    Contrary to this evidence, defendant testified that he lived and worked in Oregon.  He claimed he was in California sporadically from December 2005 through June 2006, but never for more than three consecutive days.  When he was in Redding, he would stay with Dobson and had "free gratis" to come and go whenever he came through town. (footnote omitted).  He explained that he had told the arresting officer and probation officer his address was 6998 Highway 273 because from his experience it was best to give a local address in order to get a favorable bail review or release on one's own recognizance.  It was the jury's prerogative to reject defendant's testimony given his propensity and motive to lie.

    It was undisputed that defendant failed to register in California and, for that matter after August 9, 2005, in Oregon either.  He did not notify the authorities in Oregon that he was moving to California, nor did he register on his birthday in 2006 as he was required to do.  There was ample evidence that he knew he was required to register.

    His Oregon parole officer testified that she discussed with defendant the requirement that he must report a change of residence to the appropriate law enforcement agency within 10 days of the change in residence.  This requirement was expressly set forth in the order of supervision conditions he signed on multiple occasions.  A sex offender registration obligation notification form, signed by defendant on July 29, 2003, stated: "If you move out of state, you must register within 10 days in order to be relieved of your requirement to register in Oregon.  You should also contact the appropriate agency in that state regarding their registration requirements."  On September 9, 2003, he signed another document that informed him: "Pursuant to federal law, you must also contact the appropriate agency in the state to which you have moved within ten (10) days of arriving in that state."  He completed forms containing this same information on January 22, 2004; April 29, 2004; and March 10, 2005.

    In November 2004 defendant left Oregon and went to Washington. He was later punished for failing to notify Oregon authorities of his move and failing to register as a sex offender in Washington.

    The prosecution introduced excerpts of letters defendant wrote to Rodriguez in spite of the no-contact order.  He encouraged her to dodge subpoenas and lie on his behalf.  Angry about her disclosures to the district attorney's investigator, he wrote, "Would you like to know how many ways your conversation with the DA investigator fucked up my case?"  He warned her he was going to tarnish her reputation at trial.

**B.**  **Procedural History**

Petitioner was convicted in 2006 of failing to register as a sex offender, in violation of California Penal Code § 290(a)(1)(A).  Petitioner admitted to one prior strike, and the trial court found that petitioner had three prior violent sex offenses, all of which qualified as strikes.  Petitioner was sentenced to 26 years to life in state prison.  The conviction and sentence were affirmed on direct appeal and the California Supreme Court declined review.  Petitioner's

3

post-conviction habeas applications were all denied.

## II. STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998). The AEDPA does not, however, apply in all circumstances. When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo. See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner). When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist." Pirtle, 313 F. 3d at 1167.

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

4

Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. Under both standards, "clearly established law" means those holdings of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams, 529 U.S. at 412) . "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en banc). Supreme Court precedent is not clearly established law, and therefore federal habeas relief is unavailable, unless it "squarely addresses" an issue. See Moses v. Payne, 555 F.3d 742, 753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)). For federal law to be clearly established, the Supreme Court must provide a "categorical answer" to the question before the state court. See id.; see also Carey, 549 U.S. at 76-77 (holding that a state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice created by state conduct at trial because the Court had never applied the test to spectators' conduct). Circuit court precedent may not be used to fill open questions in the Supreme Court's holdings. See Carey, 549 U.S. at 74.

In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. See

1  id. at 406.  If a state court decision is "contrary to" clearly established law, it is reviewed to
2  determine first whether it resulted in constitutional error.  See Benn v. Lambert, 283 F.3d 1040,
3  1052 n.6 (9th Cir. 2002).  If so, the next question is whether such error was structural, in which
4  case federal habeas relief is warranted.  See id.  If the error was not structural, the final question
5  is whether the error had a substantial and injurious effect on the verdict, or was harmless.  See id.

State court decisions are reviewed under the far more deferential "unreasonable application of" standard where it identifies the correct legal rule from Supreme Court cases, but unreasonably applies the rule to the facts of a particular case.  See Wiggins v. Smith, 539 U.S. 510, 520 (2003).  While declining to rule on the issue, the Supreme Court in Williams, suggested that federal habeas relief may be available under this standard where the state court either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply.  See Williams, 529 U.S. at 408-09.  The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law.  See id. at 410; see also Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003).  An "unreasonable application of" controlling law cannot necessarily be found even where the federal habeas court concludes that the state court decision is clearly erroneous.  See Lockyer, 538 U.S. at 75-76.  This is because "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."  Id. at 75.  As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless.  See Benn, 283 F.3d at 1052 n.6.

The "unreasonable application of" standard also applies where the state court denies a claim without providing any reasoning whatsoever.  See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000).  Such decisions are considered adjudications on the merits and are, therefore, entitled to deference under the

1  AEDPA.  See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982.
2  The federal habeas court assumes that state court applied the correct law and analyzes whether
3  the state court's summary denial was based on an objectively unreasonable application of that
4  law.  See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

### III.  DISCUSSION

In his petition, petitioner raises the following claims: (1) trial counsel was ineffective for failing to conduct a reasonable pre-trial investigation; (2) trial counsel was ineffective for failing to present a defense at trial; (3) post-trial counsel was ineffective for failing to present a motion for a new trial; and (4) the trial court erred by failing to instruct the jury on all the elements of the charge, including the residency requirement.[2]

#### A.    **Ineffective Assistance of Counsel Claims**

The Sixth Amendment guarantees the effective assistance of counsel.  The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984).  First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. See id. at 688.  To this end, petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment.  See id. at 690.  The federal court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance.  See id.  In making this determination, however, there is a strong presumption "that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing

---

[2] Respondent argues that the jury instruction claim is unexhausted because, while it was argued on direct appeal to the California Court of Appeal, it was never raised in the California Supreme Court.  Nonetheless, respondent argues that the claim should be denied on the merits.

Strickland, 466 U.S. at 689).

Second, a petitioner must affirmatively prove prejudice. See Strickland, 466 U.S. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.; see also Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000). A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

### 1. Pre-Trial Investigation

Petitioner argues that his trial counsel failed to interview "the Oregon witnesses" in order to "creat[e] an alibi defense the prosecution could not overcome." According to petitioner, "plenty of witnesses" would have testified that petitioner was in Oregon "at critical times," that petitioner's residence was in Oregon, and that petitioner never resided in California. In support of his claim, petitioner attaches four declarations which he says show counsel's deficient performance in not eliciting these witnesses' testimony at trial. The court does not agree.

One witness – Tara Knight – states that she called petitioner in Oregon in March, April, May, and June 2006, and that she picked up belongings for petitioner in Oregon prior to his trial in December 2006. Three other witnesses – John Mize, July Black, and David Hegewald – say that petitioner resided in Oregon from September 2005 until his arrest in June 2006. They base their testimony on visits with petitioner at an address in Oregon. As respondents note, however, these witnesses' statements do not establish an Oregon alibi defense. Assuming for the moment the matters stated in the declarations are true, they do not establish that petitioner never maintained a residence in California. It is possible that, while several witnesses visited petitioner

in Oregon while he was there on various trips, the witnesses were unaware that petitioner also maintained a residence in California.  The declarations simply do not show that petitioner resided in Oregon to the exclusion of California.  Additionally, the declaration from John Mize – petitioner's son – is inconsistent with testimony from petitioner himself.  John Mize states that petitioner lived in Oregon from May 1992 through June 2006.  Petitioner, however, testified that he moved to Washington state in 2004.

Given that John Mize's statement is inconsistent with petitioner's own testimony, and given that the witnesses' statements do not establish a credible alibi defense, the court cannot say that counsel fell outside the wide range of acceptable representation in deciding not to present this evidence.

        2.      <u>Trial Defense</u>

In a related claim, petitioner argues that trial counsel was ineffective for failing to present the Oregon alibi defense evidence at trial.  For the reasons discussed above, the court must defer to counsel's tactical judgment in not presenting such evidence.

        3.      <u>Post-Trial Motions</u>

Petitioner claims that his post-trial attorney – replacement counsel appointed after original trial counsel was relieved following the jury's verdict – failed to request a new trial based on prior counsel's ineffective assistance.  The court rejects petitioner's third attempt to bite from the same apple.  As discussed above, the court cannot say that trial counsel's performance was deficient. Because there was no basis for a finding of ineffective assistance, any motion for a new trial on that basis would have been frivolous.  Replacement counsel's performance was not deficient in refusing to raise a frivolous motion.

/ / /

/ / /

/ / /

/ / /

B.  **Jury Instruction Claim**

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of a transgression of federal law binding on the state courts. See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983). It is not available for alleged error in the interpretation or application of state law. See Middleton, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986). Habeas corpus cannot be utilized to try state issues de novo. See Milton v. Wainwright, 407 U.S. 371, 377 (1972). Thus, a challenge to jury instructions does not generally give rise to a federal constitutional claim. See Middleton, 768 F.2d at 1085) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).

However, a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process." Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980)); see also Lisenba v. California, 314 U.S. 219, 236 (1941). In order to raise such a claim in a federal habeas corpus petition, the "error alleged must have resulted in a complete miscarriage of justice." Hill v. United States, 368 U.S. 424, 428 (1962); Crisafi v. Oliver, 396 F.2d 293, 294-95 (9th Cir. 1968); Chavez v. Dickson, 280 F.2d 727, 736 (9th Cir. 1960).

In general, to warrant federal habeas relief, a challenged jury instruction "cannot be merely 'undesirable, erroneous, or even "universally condemned,"' but must violate some due process right guaranteed by the fourteenth amendment." Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988) (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)). To prevail, petitioner must demonstrate that an erroneous instruction "'so infected the entire trial that the resulting conviction violates due process.'" Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp, 414 U.S. at 147). In making its determination, this court must evaluate an allegedly ambiguous jury instruction "'in the context of the overall charge to the jury as a component of the entire trial

process.'" Prantil, 843 F.2d at 817 (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir. 1984)). Further, in reviewing an allegedly ambiguous instruction, the court "must inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." Estelle, 502 U.S. at 72 (quoting Boyde v. California, 494 U.S. 370, 380 (1990)). Petitioner's burden is "especially heavy" when the court fails to give an instruction. Henderson v. Kibbe, 431 U.S. 145, 155 (1977). Where an instruction is missing a necessary element completely, the "reasonable likelihood" standard does not apply and the court may not ". . . assume that the jurors inferred the missing element from their general experience or from other instructions. . . ." See Wade v. Calderon, 29 F.3d 1312, 1321 (9th Cir. 1994). In the case of an instruction which omits a necessary element, constitutional error has occurred. See id.

While the California Supreme Court appears not to have been presented with petitioner's jury instruction claim, some guidance can be gleaned from the California Court of Appeal's discussion:

> . . .[D]efendant contends the trial court failed to properly instruct the jury on the precise meaning of residency, including the requirement that a sex offender reside within the jurisdiction for consecutive days. He dismisses the court's holding in People v. McCleod, 55 Cal.App.4th 1205, 1219 (1997), wherein the court expressly rejected the defendant's assertion that residency must be defined for a jury. We accept the McCleod holding and have otherwise rejected defendant's insistence that a sex offender must be physically present for 10 consecutive days . . . to establish residency and thereby trigger his duty to register. . . .

In McCleod, the court concluded that the term "residency" does not have any technical legal meaning which must be expressly defined. See id. at 1217.

The instruction given stated the elements of the failure-to-register charge, including the 10-day requirement and thus did not omit any of the necessary elements of the charged offense. Given the state court's holding that, under state law, "residency" is not a technical term required to be defined, this court cannot say that the lack of a defining instruction resulted in an unfair trial where the instruction that was given described each and every element of the offense.

///

## IV. CONCLUSION

Because the instant petition can be resolved on the existing state court record, the court does not find that leave to conduct discovery should be permitted in this case.

Based on the foregoing, the undersigned recommends that petitioner's petition for a writ of habeas corpus (Doc. 1) be denied and that petitioner's motion for leave to conduct discovery (Doc. 28) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 4, 2012

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE